# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VELSICOL CHEMICAL LLC and TRANSPORTATION INSURANCE COMPANY, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| MAGNETEK, INC., | ) ) |
| Defendant. | ) ) |

17 C 2092

Judge John Z. Lee

## MEMORANDUM OPINION AND ORDER

Plaintiffs Velsicol Chemical LLC ("Velsicol") and Transportation Insurance Company, Inc. ("TIC") filed a declaratory judgment action against Defendant Magnetek, Inc. ("Magnetek") in Illinois state court, seeking a declaration that Magnetek is not entitled to coverage under TIC's insurance policies. Soon after Plaintiffs filed suit, Magnetek removed the case to federal court on the basis of diversity jurisdiction. Plaintiffs have now moved to remand the case to state court on the ground that diversity jurisdiction is lacking. For the reasons stated herein, Plaintiffs' motion to remand is granted.

## Background

This case is several decades in the making. The relevant facts begin in the early 1970s and involve the business operations of Universal Manufacturing Corporation ("UMC"). UMC manufactured fluorescent light fixtures and ballasts. Compl. ¶ 6, ECF No. 1-2. Among the ingredients in UMC's products were polychlorinated biphenyls. *Id.* ¶ 7. Throughout the 1970s, UMC purchased

polychlorinated biphenyls from Monsanto Company ("Monsanto"). *Id.* In 1972, UMC and Monsanto entered into an agreement in which UMC promised to indemnify Monsanto for liabilities and expenses arising from UMC's use of the polychlorinated biphenyls it purchased. *Id.* ¶¶ 8–9.

UMC was originally a subsidiary of Northwest Industries, Inc. ("Northwest"). *Id.* ¶ 6. In January 1986, however, Northwest sold UMC to Magnetek. *Id.* ¶ 14. As part of the sale agreement, Northwest promised to indemnify Magnetek for any environmental pollution and toxic tort claims arising from UMC's pre-sale activities. *Id.* ¶ 15. In exchange, Northwest purportedly retained all insurance rights with respect to such claims under a set of four insurance policies that Northwest had purchased between 1978 and 1986. *Id.* ¶¶ 15–17. The insurance policies had been issued by TIC. *Id.* ¶ 13.

Over the next several years, Northwest tendered numerous insurance claims to TIC arising from UMC's pre-sale activities. *Id.* ¶ 18. Many of the claims were disputed and resulted in lengthy insurance coverage litigation. *Id.* ¶ 19. In November 1999, to resolve some of these disputed claims, TIC entered into a settlement agreement with Velsicol. *Id.*[1] Under this settlement agreement, Velsicol agreed to indemnify TIC for certain claims against it. *Id.* ¶ 1.

Meanwhile, various individuals filed lawsuits against Monsanto's successors and affiliates, alleging personal injuries caused by pollution from the polychlorinated biphenyls that Monsanto had manufactured. *Id.* ¶ 11. On August

---

[1] The parties do not elaborate exactly what Velsicol's relationship is with the other commercial entities or how it became involved with the insurance claims against TIC.

2

31, 2016, Monsanto's successors and affiliates tendered an indemnity demand ("the 2016 Demand") on Magnetek, seeking indemnification for these individuals' personal-injury claims. *Id.* ¶ 12. According to Monsanto's successors and affiliates, the 1972 indemnification agreement between Monsanto and UMC obligated Magnetek, as the purchaser of UMC, to indemnify them for the 2016 Demand. *Id.*

On September 7, 2016, Magnetek tendered notice of the 2016 Demand to TIC. *Id.* ¶ 13. According to Magnetek, TIC is obligated to provide insurance coverage for the 2016 Demand pursuant to the four insurance policies that TIC issued to Northwest between 1978 and 1986. *Id.* In turn, TIC then tendered the 2016 Demand to Velsicol pursuant to the 1999 settlement agreement in which Velsicol agreed to indemnify TIC. *Id.* ¶ 1.

On February 14, 2017, Velsicol and TIC filed suit against Magnetek in the Circuit Court of Cook County, Illinois. Velsicol and TIC seek a declaration that Magnetek is not entitled to insurance coverage for the 2016 Demand under the insurance policies that TIC issued to Northwest. *Id.* On March 16, 2017, Magnetek removed the case to federal court on the basis of diversity jurisdiction. Velsicol and TIC have moved to remand the case to state court on the ground that diversity jurisdiction is lacking. Velsicol is a citizen of Delaware, and TIC is a citizen of Illinois. Notice of Removal ¶¶ 9, 11, ECF No. 1. Magnetek is a citizen of Delaware and Wisconsin. *Id.* ¶ 8.

## Legal Standard

"'Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.'" *United States v. Wahi*, 850 F.3d 296, 299 (7th Cir. 2017) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). One basis of federal jurisdiction is diversity jurisdiction, which gives federal courts authority to adjudicate civil actions "where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different States." 28 U.S.C. § 1332(a)(1). For a civil action to fall within federal courts' diversity jurisdiction, there must be complete diversity, meaning that no plaintiff in the action is a citizen of the same state as any defendant. *Krueger v. Cartwright*, 996 F.2d 928, 931 (7th Cir. 1993) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)).

When a plaintiff files a civil action in state court, the defendant may remove the action to federal court as long as the federal court would have had jurisdiction to hear the case at the time the plaintiff originally filed it. 28 U.S.C. § 1441(a); *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). A defendant seeking to remove a case to federal court bears the burden of establishing federal jurisdiction. *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352 (7th Cir. 2017); *Schur*, 577 F.3d at 758 (citing *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)). If a federal court lacks jurisdiction over a case removed from state court, the case must be remanded. 28 U.S.C. § 1447(c); *Walton v. Bayer Corp.*, 643 F.3d 994, 998 (7th Cir. 2011). Courts "interpret the removal statute narrowly and

presume that the plaintiff may choose his or her forum." *Doe*, 985 F.2d at 911. Accordingly, "any doubts about the propriety of removing a particular action should be resolved against allowing removal." *Wirtz Corp. v. United Distillers & Vintners N. Am., Inc.*, 224 F.3d 708, 715 (7th Cir. 2000); *accord Schur*, 577 F.3d at 758.

## Analysis

In seeking to maintain this action in federal court, Magnetek does not dispute that diversity jurisdiction is lacking, given that Velsicol (a plaintiff) and Magnetek (the defendant) are both citizens of Delaware. It argues, however, that the Court should disregard Velsicol's citizenship for purposes of ascertaining diversity jurisdiction because Velsicol was fraudulently joined to this action and is merely a nominal party. In the alternative, Magnetek argues that the Court should realign Velsicol as a defendant, even though Velsicol filed this action as a plaintiff. For the reasons that follow, the Court rejects these arguments.

**I.    Fraudulent Joinder**

"'Diversity jurisdiction cannot be destroyed by joinder of nondiverse parties if such joinder is fraudulent.'" *Hoosier Energy Rural Elec. Coop., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1315 (7th Cir. 1994) (quoting *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993)). To establish fraudulent joinder, "proof of fraud, though sufficient, is not necessary." *Walton*, 643 F.3d at 999. Rather, a removing defendant can establish fraudulent joinder by showing that, after resolving all issues of fact and law in the plaintiff's favor, there is no possibility that the plaintiff could state a cause of action against the defendant in state court. *Id.*; *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013) (citing *Poulos v. Naas Foods, Inc.*,

5

959 F.2d 69, 73 (7th Cir. 1992)). To determine whether the plaintiff would have any such possibility of success in state court, the district court must look to state law. *Schur*, 577 F.3d at 764; *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999).

A removing defendant bears a "heavy burden" to establish fraudulent joinder. *Schur*, 577 F.3d at 764; *Poulos*, 959 F.2d at 73. The Seventh Circuit has suggested that this burden is "even more favorable to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Schur*, 577 F.3d at 764. "If the removing defendant can meet this heavy burden, the federal district court considering removal may disregard, for jurisdictional purposes, the citizenship of certain nondiverse [parties], assume jurisdiction over a case, dismiss the nondiverse [parties], and thereby retain jurisdiction." *Morris*, 718 F.3d at 666 (internal quotation marks and citations omitted); *see also Hoosier Energy*, 34 F.3d at 1316.

To determine whether Velsicol has been fraudulently joined as a nondiverse plaintiff,[2] the Court must decide whether Velsicol would have any reasonable possibility of pursuing a declaratory judgment action against Magnetek in state court under Illinois law. *See Schur*, 577 F.3d at 764; *Schwartz*, 174 F.3d at 878.

---

[2] Although the doctrine of fraudulent joinder is most often applied where a removing defendant seeks dismissal of nondiverse co-defendants, district courts within this circuit have also applied the doctrine in cases involving nondiverse plaintiffs. *See, e.g.*, *Zotec Partners, LLC v. Herald*, No. 1:13-CV-00792-JMS, 2013 WL 3989424, at *3 (S.D. Ind. Aug. 1, 2013); *Ampere Auto. Corp. v. Fullen*, No. 01 C 6818, 2001 WL 1268554, at *2 (N.D. Ill. Oct. 17, 2001). Here, the parties do not dispute that the doctrine applies to cases involving nondiverse, fraudulently joined plaintiffs. The Court therefore assumes for the purpose of deciding Plaintiffs' motion that the doctrine indeed applies to such cases.

6

According to Magnetek, Velsicol has no reasonable possibility of such success because it "lacks standing to pursue [this] declaratory judgment cause of action." Def.'s Mem. Opp. at 5, ECF No. 14. In particular, Magnetek contends that Velsicol lacks standing because "Velsicol is not in privity of contract with Magnetek, [Velsicol] owes no duties to Magnetek, and there is no justiciable controversy between Velsicol and Magnetek." *Id.* Magnetek, however, has not met its burden of showing that these arguments are supported by Illinois law.

In Illinois, a party has standing to bring a declaratory judgment action where there is an actual controversy and the party is "interested" in the controversy. *Morr-Fitz, Inc. v. Blagojevich*, 901 N.E.2d 373, 384 (Ill. 2008) (citing *Underground Contractors Ass'n v. City of Chi.*, 362 N.E.2d 298, 300–01 (Ill. 1977)). To be "interested" in a controversy, "a party must possess a personal claim, status, or right which is capable of being affected" by the controversy's adjudication. *Int'l Union of Operating Eng'rs Local 841 Health & Welfare Fund v. Hickman*, 546 N.E.2d 1056, 1058 (Ill. App. Ct. 1989) (citing *Underground Contractors*, 362 N.E.2d at 301). Unlike Article III standing under federal law, standing under Illinois law is an affirmative defense that may be forfeited or waived. *See Lebron v. Gottlieb Mem'l Hosp.*, 930 N.E.2d 895, 916 (Ill. 2010); *Skolnick v. Altheimer & Gray*, 730 N.E.2d 4, 19 (Ill. 2000); *In re Tate Oliver B.*, 52 N.E.3d 351, 363 n.4 (Ill. App. Ct. 2016).

Illinois case law does not expressly state when an indemnitor (like Velsicol) is sufficiently "interested" in a controversy between an indemnitee and a claimant

7

(like TIC and Magnetek) to have standing to seek a declaratory judgment against the claimant. That said, Illinois courts have stated that "[a] prospective indemnitor has a direct interest in defeating the principal action for which indemnity may be sought." *N.E. Finch Co. v. R.C. Mahon Co.*, 370 N.E.2d 160, 163 (Ill. 1977); *accord Preferred Am. Ins. v. Dulceak*, 706 N.E.2d 529, 534 (Ill. App. Ct. 1999) ("[T]he indemnifying party [ ] has a direct interest in defending any suit whereby there may be a recovery against the party indemnified as to the subject matter of the indemnity."). The reason for this rule is that, once an indemnitee tenders an indemnity demand to a prospective indemnitor, the doctrine of collateral estoppel precludes the indemnitor from later relitigating the issue of the indemnitee's liability to the claimant. *N.E. Finch*, 370 N.E.2d at 163; *Preferred Am. Ins.*, 706 N.E.2d at 534. In other words, because the indemnitor is bound by liability determinations made in the principal action between the indemnitee and the claimant, Illinois courts have recognized that the indemnitor has an interest in participating in that action. *See N.E. Finch*, 370 N.E.2d at 163 ("The proper time for an indemnitor to assert the non-liability of the indemnitee to the [claimant] in the original action[ ] is in the original action.").

Because an indemnitor has a "direct interest in defeating the principal action for which indemnity may be sought," *id.*, it follows that this "direct interest" is sufficient to give the indemnitor standing under Illinois law to seek a declaratory judgment against the claimant in the principal action. To conclude otherwise would be to leave the indemnitor without an opportunity to defend itself in a lawsuit that

8

will result in a judgment to which it will be bound. *See id.* This result would be irreconcilable with Illinois case law, which implicitly assumes that the indemnitor will have an opportunity to defend itself in such a suit. *See id.* (precluding indemnitor from relitigating issues decided in an action between the indemnitee and claimant because the indemnitor had "an opportunity to defend" itself in that action); *Am. Serv. Ins. Co. v. City of Chi.*, 935 N.E.2d 715, 725 (Ill. App. Ct. 2010) ("[I]t must [ ] be the case that the insurance company [ ] has standing to litigate issues with an injured third party who has sued its insured.").

For these reasons, although the parties have not cited—and the Court has not found—Illinois case law that comprehensively delineates the circumstances in which an indemnitor has standing to bring a declaratory judgment action against an underlying claimant, the Court concludes that Velsicol has, at the very least, a reasonable possibility of pursuing a declaratory judgment action against Magnetek in Illinois court. Under the 1999 settlement agreement, Velsicol is a prospective indemnitor of TIC. Compl. ¶¶ 1, 19. In addition, TIC tendered an indemnity demand on Velsicol after receiving the 2016 Demand from Magnetek. *Id.* ¶ 1. Velsicol therefore has a "direct interest" in defeating Magnetek's claim in the principal action between Magnetek and TIC. *N.E. Finch*, 370 N.E.2d at 163; *Preferred Am. Ins.*, 706 N.E.2d at 534. Under Illinois law, this interest appears sufficient to confer standing on Velsicol to join as a plaintiff in TIC's declaratory judgment action against Magnetek in state court, given that Velsicol will be bound by the liability determinations in that action. *See N.E. Finch*, 370 N.E.2d

9

at 163. Put another way, because Illinois law bars Velsicol from relitigating issues adjudicated in the action between TIC and Magnetek, Velsicol has a "right which is capable of being affected" by the action and thus has an interest in the action sufficient to give it standing. *Int'l Union of Operating Eng'rs*, 546 N.E.2d at 1058.

Magnetek cites numerous authorities in an attempt to carry its burden to demonstrate that Velsicol has no reasonable possibility of pursuing a declaratory judgment action against it in state court. Mem. Opp. at 5–8. But the authorities that Magnetek cites miss the mark. First, many of them apply federal standing doctrine, rather than Illinois standing doctrine. Whether Velsicol would have standing under federal law to participate in a declaratory judgment action against Magnetek in federal court is immaterial to the issue of whether Velsicol has standing under Illinois law to participate in this action in state court. *Lebron*, 930 N.E.2d at 917 n.4 (noting that Illinois courts "[are] not required to follow federal law on issues of standing, and [have] expressly rejected federal principles of standing"); *see Schur*, 577 F.3d at 764 (directing federal courts to look to state law in considering fraudulent joinder in a case removed from state court); *Agrella v. Great Am. Ins. Co.*, No. 99 C 5309, 1999 WL 1101319, at *2–3 (N.D. Ill. Nov. 29, 1999). Moreover, none of the cited cases that address Illinois standing doctrine involved an indemnitor who, like Velsicol, sought to participate in an action

between an indemnitee and an underlying claimant.[3] These cases are therefore distinguishable from the present case, and Magnetek's reliance on them is unpersuasive.

In sum, Magnetek has not carried its "heavy burden" of showing that, "after resolving all issues of fact and law in favor of [Velsicol]," *Poulos*, 959 F.2d at 73 (emphasis omitted), Velsicol has no reasonable possibility of pursuing a declaratory judgment action against Magnetek in state court. The Court therefore concludes that Velsicol is not a fraudulently joined plaintiff.

## II. Whether Velsicol Is a Nominal Party

Next, Magnetek submits that the Court should disregard Velsicol's citizenship for purposes of determining diversity jurisdiction because Velsicol is merely a nominal party, rather than a real party in interest. Under Federal Rule of Civil Procedure 17, "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). In deciding whether it has diversity jurisdiction over a civil action, a federal court considers the citizenship of only the real parties in

---

[3] The one exception is *St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis v. National Guardian Risk Retention Group, Inc.*, 2015 WL 2190923 (Ill. App. Ct. 2015), which Magnetek discusses in its response brief. Mem. Opp. at 7. In *St. John's*, the court discussed Illinois standing and ripeness doctrines in a declaratory judgment action filed by an underlying claimant against the alleged tortfeasor's insurance company. *Id.* at *2, *4–8. For two reasons, Magnetek's reliance on *St. John's* is unavailing. First, *St. John's* is an unpublished decision of the Illinois Appellate Court, and it therefore has no precedential value. *See* Ill. S. Ct. R. 23(e)(1) (providing that unpublished orders are nonprecedential and generally may not be cited by any party); *Whitmore v. Kraft Foods Glob., Inc.*, 798 F. Supp. 2d 917, 924 (N.D. Ill. 2011) (rejecting defendant's reliance on unpublished order issued by the Illinois Appellate Court). Furthermore, the court in *St. John's* affirmed the trial court's dismissal order solely based on lack of ripeness, which is not at issue here. *St. John's*, 2015 WL 2190923, at *4, *8. As such, even if *St. John's* had precedential weight, it would be of little relevance to this case.

11

interest and ignores the citizenship of nominal parties. *Spartech Corp. v. Opper*, 890 F.2d 949, 952–53 (7th Cir. 1989); *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460–61 (1980).

"The real party in interest is the one who[,] by the substantive law, possesses the right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." *People of State of Ill. v. Life of Mid-Am. Ins. Co.*, 805 F.2d 763, 764 (7th Cir. 1986) (internal quotation marks omitted). "In contrast, a 'nominal party' does not have an interest in the subject matter litigated but holds the property at issue in the litigation in a 'subordinate or possessory capacity' (*e.g.*, as a trustee, agent[,] or depository)." *Sec. Ctr., Inc. v. Am. Tel. & Tel. Co.*, No. 94 C 6707, 1995 WL 307267, at *3 (N.D. Ill. May 16, 1995) (quoting *S.E.C. v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991)). "A nominal party is not concerned about which side of the controversy succeeds; rather, its role is limited to turning over the property in its possession to the prevailing party pursuant to a final judgment order." *Id.* (internal citations omitted). Put differently, a nominal party's role is "merely incidental," and "it is of no moment to him whether the one or the other side in the controversy succeeds." *Am. Country Ins. Co. v. Turner Constr. Co.*, No. 01 C 9561, 2002 WL 507128, at *2 (N.D. Ill. Apr. 3, 2002) (quoting *Cherif*, 933 F.2d at 414) (internal quotation marks and brackets omitted).

Whether a party is a real party in interest or a nominal party is determined by the substantive law of the forum that created the right being sued upon. *See Life of Mid-Am. Ins.*, 805 F.2d at 764. The party seeking to invoke federal diversity

jurisdiction bears the burden of demonstrating that a nondiverse litigant is a nominal party whose citizenship may be disregarded. *Jennings v. Hill*, No. 05 C 0974, 2005 WL 1041327, at *2 (N.D. Ill. May 3, 2005).

Magnetek has not met its burden of showing that Velsicol is a nominal party. As discussed above, Illinois courts have held that an indemnitor such as Velsicol has a direct interest in participating in the principal action for which indemnity may be sought. *N.E. Finch*, 370 N.E.2d at 163; *Preferred Am. Ins.*, 706 N.E.2d at 534. It is hardly "of no moment" to Velsicol whether Magnetek wins or loses, because Velsicol will be obligated to indemnify TIC only if Magnetek prevails. *Cherif*, 933 F.2d at 414. Furthermore, Velsicol's role bears no semblance to that of a neutral third party who must simply turn over property in its possession to whichever litigant happens to win; Velsicol is potentially liable as an indemnitor with respect to TIC—and, again, only if Magnetek prevails. Velsicol therefore is not merely an incidental, disinterested party in this action. *See id.*

Magnetek asks the Court to conclude otherwise, arguing that Velsicol must be deemed a nominal party because it is not a party to TIC's insurance policies. Mem. Opp. at 10. Magnetek cites several cases in support of this argument, but they speak only to the general principle that an individual who is not a party to a contract is not typically a necessary party in a breach of contract action. None of them addresses the specific question of when an indemnitor is a nominal party in a case between an indemnitee and a claimant under Illinois law. *See id.* (citing *Providence Gravure, Inc. v. R.S. Feldman & Co.*, No. 85 C 2171, 1985 WL 2485, at

13

*1 (N.D. Ill. Sept. 6, 1985); *Francis Oil & Gas, Inc. v. Exxon Corp.*, 661 F.2d 873, 878 (10th Cir. 1981); *Helzberg's Diamond Shops, Inc. v. Valley W. Des Moines Shopping Ctr., Inc.*, 564 F.2d 816, 820 (8th Cir. 1977)). Magnetek's reliance on these cases is therefore misplaced.

Finally, Magnetek argues that Velsicol should be deemed a nominal party because Plaintiffs' complaint does not allege any "operative facts" with respect to Velsicol. *Id.* This argument, too, is unpersuasive; it asks the Court to ignore allegations about Velsicol that are included in Plaintiffs' complaint. *See* Compl. ¶ 19 (discussing the settlement agreement that TIC and Velsicol entered into in 1999); *id.* ¶ 1 ("TIC [ ] tendered Magnetek's claim to Velsicol for defense and indemnification pursuant to [the] 1999 settlement and indemnity agreement.").

For these reasons, Magnetek has not met its burden of showing that Velsicol is a nominal party whose citizenship may be disregarded for purposes of determining whether the Court has diversity jurisdiction over this case. As such, the Court lacks subject-matter jurisdiction, and the case must be remanded to state court.

## III. Realignment of Parties

In the alternative to its arguments that Velsicol is fraudulently joined and is merely a nominal party, Magnetek argues that Velsicol should be realigned as a defendant in this action. The basis for this argument is that, according to Magnetek, Velsicol and TIC are adverse to one another, even though they are co-plaintiffs, because they dispute the scope of Velsicol's indemnification obligations to

14

TIC under the 1999 settlement agreement.[4]  Mem. Opp. at 12–13.  If Velsicol were realigned as a defendant, then there would be complete diversity among the parties, and the Court would have jurisdiction over this case.

In advancing this argument, Magnetek relies primarily upon *American Motorists Insurance Co. v. Trane Co.*, 657 F.2d 146 (7th Cir. 1981).  In *American Motorists*, the original plaintiff sued two defendants, an insurer and its insured.  *Id.* at 148.  The district court realigned the defendant-insurer as a plaintiff, reasoning that the insurer and the original plaintiff shared an interest in avoiding liability to the insured.  *Id.*  On appeal, the Seventh Circuit reversed.  *Id.* at 151.  The Seventh Circuit acknowledged that "[r]ealignment is proper where there is no actual, substantial conflict between the parties that would justify placing them on opposite sides of the lawsuit."  *Id.*  But it explained that "a mere mutuality of interest in escaping liability is not of itself sufficient to justify realignment."  *Id.*  Applying these principles, the court concluded that the defendant-insurer should not have been realigned as a plaintiff, even though it shared an interest with the original plaintiff in avoiding liability to the insured, because the defendant-insurer and the original plaintiff otherwise had conflicting interests.  *Id.*

---

[4]     The complaint does not indicate whether Velsicol and TIC do, in fact, dispute the scope of their indemnification agreement.  But Plaintiffs' motion to remand indicates that such a dispute indeed exists.  Mot. Remand at 5, ECF No. 7 ("Velsicol and TIC may, in later proceedings, be adverse on the question of the exact nature of the indemnity obligations that Velsicol has to TIC.").  The Court may consider the existence of this dispute even though it is not discussed in the complaint, because "court[s] may look beyond the pleadings" in determining whether parties should be realigned according to their true interests in cases implicating diversity jurisdiction.  *Am. Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 149 (7th Cir. 1981).

Although *American Motorists* holds that realignment of parties may sometimes be proper, the case ultimately undermines, rather than supports, Magnetek's position. Like the defendant-insurer in *American Motorists*, Velsicol certainly has an interest in avoiding liability to its co-party, TIC. But Velsicol's interests are also in "actual, substantial conflict" with Magnetek's. *Id.* If Magnetek is successful in defending this suit, then Velsicol may face liability to TIC as TIC's indemnitor; conversely, if Magnetek is unsuccessful in defending this suit, then Velsicol's liability to TIC will be eliminated. Thus, Magnetek's and Velsicol's respective interests are in conflict with one another. *See id.* (explaining that the original plaintiff and the defendant-insurer had conflicting interests where a finding of liability as to one party would reduce the liability of the other).

Because Velsicol's interests are in conflict with Magnetek's, realigning Velsicol to be Magnetek's co-defendant would be improper. *See id.* at 149, 151. This is all the more so given that the effect of realignment would be to create diversity jurisdiction when none currently exists. *See Wolf v. Kennelly*, 574 F.3d 406, 412 (7th Cir. 2009) (quoting *Krueger v. Cartwright*, 996 F.2d 928, 932 n.5 (7th Cir. 1993)) ("[I]t is 'undoubtedly improper' to realign parties for the purpose of preserving jurisdiction if 'an actual, substantial controversy exists between a party on one side of the dispute and its named opponent.'"); *Sabo v. Dennis Techs., LLC*, No. 07-CV-283-DRH, 2007 WL 1958591, at *6 (S.D. Ill. July 2, 2007) ("While a court can, in some instances, realign the parties to a case according to their true interests, use of realignment to manufacture federal subject matter jurisdiction is

disfavored."). The Court accordingly declines to realign Velsicol as a defendant in this action.

## Conclusion

For the reasons stated herein, Plaintiffs' motion to remand [7] is granted. This action is hereby remanded to the Circuit Court of Cook County, Illinois, and terminated on this Court's docket.


**IT IS SO ORDERED.**          ENTERED   5/26/17

*[signature: John Z. Lee]*

_____
**John Z. Lee
United States District Judge**